UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

BRIAN P. BESSETTE and
LISA BESSETTE,

                              Plaintiffs,

       -against-                                                   8:19-CV-1000 (LEK/CFH)

LOWE'S HOME CENTERS, LLC,

                              Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

        Plaintiffs Brian Bessette and Lisa Bessette (collectively "Plaintiffs") initially brought this action against Lowe's Home Center, LLC ("Lowe's" or "Defendant") and DGS Retail, Inc. alleging claims stemming from a August 14, 2016 accident that occurred at the Lowe's store in Plattsburgh, New York. Dkt. No. 1 ("Complaint"). DGS Retail, Inc. filed a cross claim against Lowe's, Dkt. No. 7, but the parties later stipulated to dismiss DGS Retail, Inc. as a party, Dkt. Nos. 26, 27, leaving Lowe's as the sole defendant.

        Now before the Court is Defendant's motion for summary judgment. Dkt. Nos. 32 ("Motion"), 32-10 ("Defendant's Statement of Material Facts"), 32-11 ("Defendant's Memorandum of Law"). Plaintiffs oppose the Motion, Dkt. Nos. 41 ("Response"), 41-7 ("Plaintiffs' Statement of Material Facts"), 41-8 ("Plaintiffs' Memorandum of Law"), and Defendant has filed a reply, Dkt. Nos. 42 ("Reply"), 42-3 ("Reply Memorandum of Law"), 42-4 ("Response to Plaintiffs' Statement of Material Facts"). For the following reasons, the Court denies Defendant's Motion.

## II.   BACKGROUND

The following facts are undisputed, except where otherwise noted.

Plaintiffs are citizens of the State of Vermont. Compl. ¶¶ 4–5; Dkt. No. 8 ("Answer") ¶¶ 4–5. Defendant is a foreign limited liability company with a principal headquarters in North Carolina. Compl. ¶ 6; Ans. ¶ 6. This case arises from an accident that occurred on August 14, 2016[1] at the Lowe's store in Plattsburgh, New York. Def.'s SMF ¶ 4; Pl.s' SMF ¶ 4.

Brian Bessette testified that "[t]he accident occurred in an aisle where there were bound rugs, carpets on the left side as you walked down the aisle, and then there were carpet remnants on the right side of the aisle." Def.'s SMF ¶ 6; Pl.s' SMF ¶ 6. Mr. Bessette entered the aisle with his wife, Lisa Bessette, who he believes was the only witness to the accident. Def.'s SMF ¶ 7; Pl.s' SMF ¶ 7. Mr. Bessette described the accident as follows:

> I'm on the right side of the aisle. And Lisa is partial to blues. She was on the left side of the aisle, and she was looking at a blue carpet. I saw a blue remnant on my side, and I said, Lisa, there's one here. The carpet was in a plastic sleeve. There was a tear in the plastic sleeve like someone had put their finger through it before. And as she came over to look at the carpet color and texture, I had put my finger in the hole in the bag, started to bring it towards me, and at that point in time the top portion folded over, crashed into the back of the two horizontal metal signs, which came crashing down on my head.

Def.'s SMF ¶ 8; Pl.s' SMF ¶ 8. The signs in question consisted of metal frames, hinged at the bottom and attached at the top only by magnets. See Def.'s SMF ¶¶ 12, 13; Pl.s' SMF ¶¶ 12, 13; see also Dkt. No. 32-7 at 56–57. Inside of the metal frames were foam core boards. See Def.'s SMF ¶ 12; Pl.s' SMF ¶ 12. Mr. Bessette testified that he is 6'2" and that the bottom of the signs

---

[1] There appears to be some confusion as to whether the incident occurred on August 14, 2016, or August 16, 2016, however this fact is not material to Defendant's Motion.

hinged from a bar about eight feet off the ground, such that when magnets were knocked loose, the signs swung down, making contact with his head and causing a laceration and concussion-like symptoms. See Def.'s SMF ¶ 11; Pl.s' SMF ¶¶ 11, 26; Def.'s Resp. to Pl.s' SMF ¶ 26; see also Dkt. No. 32-7 at 63. Mr. Bessette testified that while he remained standing, he was dazed and believed someone had punched him. Def.'s SMF ¶ 13; Pl.s' SMF ¶ 13.

While Mr. Bessette testified that he was angry and wished to leave following the accident, Mrs. Bessette insisted on reporting the incident. Dkt. No. 32-5 at 46–7. Plaintiffs reported the incident to Jonathan Gingrich, who was then the assistant store manager. Id. at 47–48; see generally Dkt. No. 32-7. They also took a photograph of the signs as they had come to rest after striking Mr. Bessette's head. See Dkt. No. 32-5 at 49–54, 77.

Gingrich testified that the signs did indeed fall but that he was unaware of any previous incidents in which such signs had fallen. Dkt. No. 32-7 at 57, 64. He also testified that customers were able to remove even ten-to-twelve foot carpeting on their own, and that he had observed such vertically displayed carpets fold over toward the top, though it was not a common occurrence. Pl.s' SMF ¶ 25; Def.'s Resp. to Pl.s' SMF ¶ 25. However, David Lewis, the Lowe's District Manager at the time, testified that the carpeting depicted in Plaintiffs' photograph would not fold over. Def.'s Resp. to Pl.s' SMF ¶ 22. Like Gingrich, Lewis was unaware of any other similar prior incidents. Def.'s SMF ¶ 21; Pl.s' SMF ¶ 21.

Mr. Bessette testified that ever since the accident he has experienced frequent and severe headaches, which have not responded to treatment. Dkt. No. 32-5 at 94–97. He and Mrs. Bessette brought this action alleging negligence by Defendant and seeking damages for Mr. Bessette's

pain and suffering, emotional and psychological trauma, and for Mrs. Bessette's loss of consortium. See Compl. ¶¶ 43, 45, 98, 100.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.    DISCUSSION**

Defendant raises two arguments in support of its Motion. First, Defendant argues that the danger of the falling sign was not foreseeable as a matter of law. Def.'s Mem. of L. at 2–6. Second, Defendant argues that it did not have actual or constructive notice of the alleged dangerous condition. Id. at 6–9. The Court considers each argument in turn.

**A.    Foreseeability**

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Borley v. United States, 22 F.4th 75, 78 (2d Cir. 2021) (quoting Akins v. Glens Falls City Sch. Dist., 424 N.E.2d 531 (1981)). "[I]n this case, the 'duty' at issue is [defendant's] common-law responsibility to show due care to customers by 'maintain[ing] its premises in a reasonably safe condition.'" Id. at 79 (quoting Kellman v. 45 Tiemann Assocs., Inc., 662 N.E.2d 255 (1995)).

Defendant argues, relying heavily on Pinero v. Rite Aid of N.Y., Inc., 294 A.D.2d 251 (1st Dep't 2002), that "[a]n actionable duty . . . 'only arises when the risk of harm is reasonably foreseeable,'" Def.'s Mem. of L. at 3 (quoting Pinero, 294 A.D.2d at 252), and that here the risk was "unforeseeable as a matter of law." Id. at 6. In Pinero, the plaintiff sought to purchase several

boxes of macaroni and cheese, but was unable to reach the shelf on which they were located because she was blocked by a wagon full of merchandise. 294 A.D.2d at 251. A store employee attempted to hand the boxes to the plaintiff, but accidentally dropped them. Id. When plaintiff attempted to catch the falling boxes, she struck her knee on the wagon, causing her to fall and sustain injuries. Id. Noting that "[q]uestions of foreseeability are for the court to determine as a matter of law when there is only a single inference that can be drawn from the undisputed facts," the Pinero court concluded that since the wagon was in plain view, it was unforeseeable that the store employee's action in attempting to pass the macaroni would lead to injury. Id. at 252–53.

Defendant also notes that the Second Circuit cited Pinero with approval in Matteo v. Kohl's Dep't Stores, Inc., 533 F. App'x. 1, 2013 WL 3481365 (2d Cir. 2013). In Matteo, the plaintiff was injured when she tripped over a display rack and caster wheel in the defendant's store. 533 F. App'x. at 2. Like the Pinero court, the Matteo court found the risk of injury unforeseeable because the "display rack and caster wheel over which Matteo allegedly tripped were open and obvious and not inherently dangerous." Id.

Here, Defendant argues, as in Pinero and Matteo, "the sign and its location were open and obvious, and not inherently dangerous." Mot. at 6. This argument is flawed because, while the sign here was open and obvious, there is no evidence in the record to suggest that its hinges and magnetic attachment system, the features which allowed it to swing down and strike a customer, were similarly obvious.

In addition, Defendant contends that "[t]he risk of danger of a customer grabbing and pulling a roll of carpet in a manner that would cause the top of the carpet to fold over at the precise location that it would then contact the top of the signs to cause the signs to swing down

6

was, like in Pinero, minuscule and unforeseeable as a matter of law. " Id. at 6. While this description does make Plaintiff's accident appear improbable, the Court finds this argument unpersuasive for two reasons. First, "Plaintiff need not demonstrate, . . . the precise manner in which the accident happened, or [that] the extent of injuries . . . was foreseeable." Petraglia v. Moller & Rothe, Inc., 500 N.Y.S.2d 690, 692 (1986) (quoting Restatement, Torts 2d, § 435, subd. 2). Thus, a jury could reasonably conclude that vertically storing heavy objects behind a magnetically attached sign created a foreseeable risk of injury, even if, for instance, the precise manner in which the carpet bent was unlikely. Second, even under the standard articulated in Pinero, the set of circumstances in which a Court may determine foreseeability as a matter of law is narrow, requiring that "there is only a single inference that can be drawn from the undisputed facts." Pinero, 294 A.D.2d at 252. (emphasis added). As demonstrated by Pinero and Matteo, courts are often willing to determine foreseeability as a matter of law where the allegedly dangerous condition was open and obvious. However, in general New York courts prefer to leave questions of foreseeability to the jury. See Borley, 22 F.4th at 79 ("New York, as much as any state, overwhelmingly treats the question of whether a particular defendant showed sufficient care as a question for the jury — that is, a question not suited for summary judgment."); see also Liriano v. Hobart Corp., 170 F.3d 264, 268 (2d Cir. 1999) (collecting New York cases and stating that the "courts of New York" have repeatedly endorsed the notion that "judges should be very wary of taking the issue of liability away from juries, even in situations where the relevant dangers might seem obvious, and especially when the cases in question turn on particularized facts"). For instance, in Petraglia v. Moller & Rothe, Inc., 500 N.Y.S.2d 690, 691 (1986), the plaintiff was injured when a door, disattached from its hinges and leaned against a wall, fell on

7

her back. Petraglia, 500 N.Y.S.2d at 691. The Petraglia court found that "the plaintiff's evidence allows for varying inferences as to foreseeability and negligence and was therefore an issue for the jury to resolve" Id. at 692 (cleaned up). The same is true here. The record includes facts from which a reasonable jury could conclude that the risk of the condition was foreseeable. See, e.g., Dkt. No. 32-7 at 39 (Gingrich testifying he had previously seen the carpets fold over toward the top), 56 (Gingrich testifying that the purpose of the magnets was "[s]o the sign could swing down"). As such, summary judgement on this ground is denied.

**B. Notice**

Under New York law, as Defendant notes, "Defendants cannot be held liable for injury caused by a defective condition unless they had actual or constructive notice of that condition." Def. Mem. of L. at 6 (quoting Dwyer v. West Bradford Corp., 188 A.D.2d 813, 814 (3d Dep't 1992)). Defendant argues that "[w]here, as here, there is no indication in the record that defendant created the dangerous condition or had actual notice of it, plaintiff must proceed on the theory of constructive notice." Id. at 7 (quoting Collins v. Grand Union Co., 201 A.D.2d 852 (3d Dep't 1994)). Defendant then proceeds to explain why it lacked constructive notice.

The flaw in Defendant's argument is readily apparent: Defendant has cited no evidence whatsoever to suggest that it was not responsible for installing the hinged signs, vertically stocking carpets, or otherwise creating the condition that led to the accident, see generally Mot. Indeed, all evidence in the record suggests that Defendant and its employees did in fact create the condition in question. See, e.g., Dkt. No. 32-7 at 38 (Gingrich describing how carpets were vertically stocked), 58 (Gingrich testifying that Defendant had a remodel team in charge of

signage); Dkt. No. 32-8 at 25–26 (Lewis describing how each Lowe's store chose which items to display and how to display them).

Confronted with this argument, see Pls.' Mem. of L. at 9–12, Defendant offers no rebuttal in its Reply, instead merely noting that "Lowe's did not argue in its moving papers that it did not create a dangerous condition [because] there was no dangerous condition to begin with." Reply Mem. of L. at 3. However, under New York law, negligence does not require that Defendant had notice of a condition's dangerousness, only that it had notice of the condition's existence. See, e.g., Harris v. Seager, 941 N.Y.S.2d 415 (4th Dep't. 2012) ("To establish the notice element of her negligence claim, plaintiff was required to demonstrate that defendants had notice of conditions that she alleged were dangerous, but she was not required to demonstrate that defendants knew that those conditions were dangerous."). Furthermore, where a defendant created the condition in question, no further notice is required. See, e.g., Gayman v. Pathmark Stores, Inc., No. 04-CV-7882, 2005 WL 1540812, at *3 (S.D.N.Y. June 30, 2005) ("Where the defendant created the dangerous condition, actual notice is presumed.") (quoting Rose v. Da ECIB USA, 686 N.Y.S.2d 19, 21 (1st Dep't 1999)).

Because Defendant has failed to demonstrate that there is no dispute of material fact as to its contention that it did not create the condition that led to Mr. Bessette's accident, Defendant's motion for summary judgement is denied.

**C. Green Affidavit**

In addition to the arguments discussed above, Defendant argues that the Court should strike the affidavit of Plaintiff's expert Lee Green, filed along with Plaintiff's Response. Reply Mem. of L. at 3–6. However, because the Court has concluded, without considering Green's

9

affidavit, that Defendant's Motion must be denied, the Court declines to address this issue. See Haley v. Tchrs. Ins. & Annuity Ass'n of Am., No. 17-CV-855, 2021 WL 4481598, at *7 (S.D.N.Y. Sept. 30, 2021) ("Because the Court does not rely on Dr. Kra's expert reports and opinions to decide the summary judgment motions, Defendant's motion to strike is denied as moot.").

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 32) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: February 15, 2022
Albany, New York

LAWRENCE E. KAHN
United States District Judge